**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DAVID H. SLEDGE,**

    **Plaintiff,**

       **v.**

**DISTRICT OF COLUMBIA,**

    **Defendant.**

**Civil No. 11-1888 (JDB)**

---

**MEMORANDUM OPINION**

Plaintiff David H. Sledge brings suit against the District of Columbia for race discrimination and retaliation. Sledge, an African-American man, is an employee of the District of Columbia Metropolitan Police Department ("MPD"). He alleges that MPD intentionally discriminated against him because of his race and retaliated against him for opposing discriminatory disciplinary practices. He asserts claims under 42 US.C. § 1981, 42 U.S.C. § 1983, and Title VII of the Civil Rights Act.

The District now moves to dismiss plaintiff's claim under 42 U.S.C. § 1981. The District argues that Sledge cannot assert a private right of action against a state actor under § 1981. For the reasons set out below, the Court will grant defendant's motion and dismiss plaintiff's § 1981 claim.

## I.  Background

Sledge began to complain about being the victim of discrimination in November 2008, Compl. (Oct. 25, 2011) [Docket Entry 1] ¶ 21, but the relevant events predominantly occurred following a triple homicide on February 1, 2009, that was investigated by MPD. Internal Affairs initiated an investigation regarding Sledge's alleged failure to ensure a plan of action regarding

the homicides and for failing to be prepared for a related briefing. Compl. ¶ 23. The investigation also dealt with his alleged failure to complete assigned tasks and to inform his immediate supervisor of those tasks. Id.

On February 12, 2009, Sledge met with an Equal Employment Opportunity/Diversity Officer about his concerns regarding racial discrimination and retaliation. See Compl. ¶ 14. On March 3, 2009, he filed a discrimination complaint against his employer with the Equal Employment Opportunity Commission. Compl. ¶ 33. After Sledge complained, his supervisor indicated she intended to have him demoted. Compl. ¶ 17. His request that he be removed from that supervisor's supervision was denied. Compl. ¶¶ 34-35. On June 24, 2009, following the Internal Affairs investigation, Sledge received notice that he would be demoted to lieutenant as a result of the events concerning the February 1, 2009 homicides. Compl. ¶ 24. He appealed the final notice, and was instead suspended in lieu of a demotion for twenty days without pay. Compl. ¶¶ 24-25.

Sledge alleges that the penalty he received was more severe than penalties that similarly situated white officers received for similar or greater infractions. See Compl. ¶¶ 26, 45. In addition to his demotion, Sledge was involuntarily transferred twice and lost seniority status as a result of those transfers. Compl. ¶ 56. He alleges that MPD intentionally discriminated against him because of his race, Compl. ¶ 101, and disparately disciplined him in comparison to fellow white police officers. Compl. ¶ 45.

## II.  **Standard of Review**

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555–56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); accord Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 679-680.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512–13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant Cnty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555–56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113

(D.C. Cir. 2000). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

### III.   Discussion

Defendant has moved for partial dismissal of the complaint, arguing that Sledge has failed to state a claim under 42 U.S.C. § 1981 because this section does not provide for a private right of action against state actors. Def.'s Mot. Partial Dismissal of Pl's Compl. (Dec. 23, 2001) [Docket Entry 5] ("Def.'s Mot.") at 5. Defendant contends that this case is controlled by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989), which held that 42 U.S.C. § 1983 provides the exclusive remedy for the violation of rights guaranteed by § 1981 when the alleged violation is by a state actor. Def.'s Mot. at 5-6. Plaintiff argues to the contrary that a § 1981 claim may be brought against the District in light of amendments to § 1981 made by the Civil Rights Act of 1991. Pl.'s Opp'n Def.'s Mot. Partial Dismissal of Compl. (Feb. 8, 2012) [Docket Entry 7] at 6-7. The D.C. Circuit has not previously addressed whether the Supreme Court's ruling in Jett was abrogated by the Civil Rights Act of 1991. See Moonblatt v. District of Columbia, 572 F. Supp. 2d 15, 26 n.4 (D.D.C. 2008).[1]

---

[1] Plaintiff incorrectly claims that this Court has held that § 1981 claims may be brought against the District of Columbia, citing Dickerson v. District of Columbia, 806 F. Supp. 116 (D.D.C. 2011), and Smith v. Janey, 664 F. Supp. 2d 1 (D.D.C. 2009). However, neither of these cases

In evaluating whether § 1981 as amended implies a private right of action, the Court must examine the rights-creating language of § 1981 and consider whether it provides a remedy. The Supreme Court has stated that "[t]he distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury." Chelentis v. Luckenbach, 247 U.S. 372, 384 (1918). Private rights of action to enforce federal law must be created by Congress. Touche Ross & Co. v. Redington, 442 U.S. 560, 578 (1979). Since § 1981 does not explicitly create a remedy against state actors, this Court must determine whether a remedy against state actors is implied by that provision.

The Supreme Court originally decided this question in 1989, holding that § 1981 does not itself provide a remedy against state actors. Jett, 491 U.S. at 733-35. The Court noted in Jett that courts should not imply rights of actions where Congress has already established a different remedial scheme. See id. at 731. Since § 1983 provides a remedy against persons acting under color of state law, the Court declined to imply a cause of action under § 1981 independent of § 1983. See id. at 731-732. The Court held that the exclusive federal remedy against state actors for violation of a right guaranteed in § 1981 is 42 U.S.C. § 1983. Id. at 733. Section 1983 provides that every person who, under color of law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

The Civil Rights Act of 1991 amended § 1981. In addition to adding a definition of the phrase "make and enforce contracts," 42 U.S.C. § 1981(b), the amendments mandated that the rights protected by § 1981 are "protected against impairment by nongovernmental discrimination

---

considered whether Jett remains good law because the issue was not raised by the parties. See Dickerson, 806 F. Supp. 2d at 119-21 (granting plaintiff's motion to amend his complaint to include a § 1981 claim); Smith, 664 F. Supp. 2d at 8 (ruling that plaintiff failed to allege sufficient facts to maintain a § 1981 claim).

and impairment under color of State law," 42 U.S.C. § 1981(c). The question now presented is
whether the 1991 amendments abrogated the Court's holding in Jett and created a separate cause
of action under § 1981 against local government entities. Seven circuits have considered this
issue, with all but one holding that Congress did not create such a cause of action by amending §
1981. Compare McGovern v. City of Philadelphia, 554 F.3d 114, 122 (3rd Cir. 2009) ("[W]e
join five of our sister circuits in holding that no implied right of action exists against state actors
under 42 U.S.C. § 1981."), Arendale v. City of Memphis, 519 F.3d 587, 599 (6th Cir. 2008)
(same), Bolden v. City of Topeka, 441 F.3d 1129, 1137 (10th Cir. 2006) (same), Oden v.
Okitbbeha Cnty., 246 F.3d 458, 464 (5th Cir. 2001) (same), Butts v. Cnty. of Volusia, 222 F.3d
891, 894 (11th Cir. 2000) (same), and Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 n.1 (4th Cir.
1995) (same), with Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1214
(9th Cir. 1996) ("[W]e conclude that the amended 42 U.SC. § 1981 contains an implied cause of
action against state actors, thereby overturning Jett's holding that 42 U.S.C. § 1983 provides the
exclusive remedy against state actors for the violation of rights under 42 U.S.C. § 1981.").

In finding that the 1991 amendments created an implied remedy against state actors, the
Ninth Circuit relied on Cort v. Ash, 422 U.S. 66 (1975), which set out a four-factor test to assess
whether a private cause of action is implied in a statute that does not expressly provide one. See
Fed'n of African Am. Contractors, 96 F.3d at 1211. That test requires courts to consider: (1)
whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2)
whether there was legislative intent to create such a remedy; (3) whether implying a remedy
would be consistent with the underlying purposes of the legislative scheme; and (4) whether this
type of cause of action is traditionally relegated to state law. Cort, 422 U.S. at 78.

But the Supreme Court has moved away from that multi-factor analysis, instead focusing on the second <u>Cort</u> factor of statutory intent. <u>See</u> <u>Touche Ross</u>, 442 U.S. at 575 ("The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."). Indeed, since the Ninth Circuit decided <u>Federation of African American Contractors</u>, that shift has become even more pronounced. <u>See</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-287 (2001) ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). In the wake of <u>Sandoval</u>, the D.C. Circuit has declined to imply causes of action in light of Congressional silence absent compelling and unusual circumstances. <u>See</u> <u>McKesson Corp. v. Islamic Republic of Iran</u>, 672 F.3d 1066, 1078 (D.C. Cir. 2012); <u>see also</u> <u>Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group</u>, 219 F. Supp. 2d 20, 33 (D.D.C. 2002) ("<u>Sandoval</u> makes very clear that courts cannot read into statutes a cause of action that has no basis in the statutory text.").

The express language of the 1991 amendments indicates that § 1981 protects against racial discrimination by private and state actors. Thus, the section "creates a right that private or state actors may violate but does not itself create a remedy for that violation." <u>Butts</u>, 222 F.3d at 894. In <u>Jett</u>, the Court reasoned that § 1981 implicitly created an independent cause of action against private actors because no other statute created such a remedy. <u>Jett</u>, 491 U.S. at 732. Because § 1983 provided a remedy against persons acting under color of state law, however, the Court declined to imply a cause of action under § 1981 against state actors. <u>Id.</u> at 731-32. The language of § 1981 after amendment still only addresses substantive rights. 42 U.S.C. § 1981(c). Section 1983, then, remains the only provision to expressly create a remedy against persons acting under color of state law. <u>Oden</u>, 246 F.3d at 463. Hence, the addition of the amendment's

language creates no more of a justification for the judiciary to imply a cause of action under §

1981 against state actors than existed when the Supreme Court decided Jett. Id. Although the

Ninth Circuit placed great weight on the inclusion of language protecting § 1981 rights from

impairment by both private and governmental entities, see Fed'n of African Am. Contractors, 96

F.3d at 1213, this approach fails to recognize the distinction between rights and remedies. See

McGovern, 554 F.2d at 119. Congress provided no indication through the 1991 amendments that

§ 1981 was intended to create a cause of action against state actors.

The legislative history of the 1991 amendments supports this conclusion. According to

the legislative history, Congress added the relevant language to codify the Supreme Court's

decision in Runyon v. McCrary, 427 U.S. 160, 173 (1976), which established that § 1981

protects against private discrimination as well as discrimination by state actors. See Bolden, 441

F.3d at 1136 (citing H.R. Rep. No. 102-40(II) at 37). The 1991 Civil Rights Act was also

intended "to respond to recent decisions of the Supreme Court by expanding the scope of

relevant civil rights statutes in order to provide adequate protection to victims of discrimination,"

Pub. L. No. 102-166, 105 Stat. 1071, but the Act's legislative history provides no indication that

Jett was one of the cases Congress sought to correct. See Butts, 222 F.3d at 894 (citing H.R. Rep.

No. 102-40(I), at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630; H.R. Rep. No. 102-40(II),

at 37 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 731). The Civil Rights Act and its legislative

history name several Supreme Court decisions which the Act is intended to overrule, but Jett was

not identified even though it was decided less than two years before Congress acted. See H.R.

Rep. No. 102-40(I); H.R. Rep. No. 102-40(II). "[O]nly one who never relies on committee

reports would fail to be impressed by the total absence in the committee reports of any mention

of Jett . . . ." Bolden v. City of Topeka, 441 F.3d at 1137 (10th Cir. 2006). Given the rule of

statutory construction that repeal by implication will not be found unless intent to repeal is "clear and manifest," <u>U.S. v. Williams</u>, 216 F.3d 1099, 1101 (D.C. Cir. 2000), Congress's silence belies that it intended to repeal such a notable ruling. <u>See</u> <u>McGovern</u>, 554 F.3d at 120.

Hence, in the 1991 amendments, Congress neither explicitly created a remedy against state actors in addition to § 1983, nor expressed its intent to overrule <u>Jett</u>. This Court is not willing, then, to find that the 1991 amendments superseded the Supreme Court's analysis in <u>Jett</u>. This decision is consistent with the D.C. Circuit's strict approach to implied rights of action, <u>see</u> <u>McKesson Corp.</u>, 672 F. 3d at 1078, and with the clear weight of Circuit decisions on this issue discussed above.

## IV.   <u>Conclusion</u>

Accordingly, Sledge cannot maintain an independent cause of action under § 1981 against the District of Columbia and his § 1981 claim must be dismissed. A separate order has been issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated:  <u>June 26, 2012</u>